UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

JANICE J. ROBBINS,

              Plaintiff,                              <u>MEMORANDUM & ORDER</u>

      v.                                           03-CV-5792 (NGG)

AETNA LIFE INSURANCE COMPANY,

              Defendant.
--------------------------------------------------------X

GARAUFIS, United States District Judge.

        In this suit, Janice Robbins ("Robbins" or "Plaintiff"), who was a registered nurse

employed by the North Shore-Long Island Jewish Health System ("North Shore LIJ") brings suit

against Aetna Life Insurance Company ("Aetna" or "Defendant") under the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1001, <u>et</u> <u>seq.</u> ("ERISA").  At this time, the

court considers Plaintiff's and Defendant's cross-motions for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, the Defendant's

motion is DENIED and Plaintiff's motion is GRANTED to the extent that this matter is

REMANDED to Defendant to issue a new determination as set forth in this Memorandum and

Order.

**I.**      **Facts**

        The following facts are not in dispute.[1]  Robbins worked at North Shore LIJ as an

---

[1] Both parties submitted statements pursuant to Local Rule 56.1, which requires movants for summary judgment to submit, with the motion, a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." E.D.N.Y. Civ. R. 56.1(a) (emphasis in original).  Papers submitted in opposition to this motion "shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." E.D.N.Y. Civ. R. 56.1(b)

operating room nurse. (Plaintiff's Rule 56.1 Statement ("Pl. 56.1 Stmt.") ¶ 1.)[2] Aetna is the claims administrator of the long-term disability benefit policy for North Shore LIJ employees. (Pl. 56.1 Stmt. ¶¶ 2-3; Defendant's Local Rule 56.1 Statement ("Def. 56.1 Stmt.") ¶ 2.) By 2002, Robbins had been working as an operating room nurse for over a decade. (Pl. 56.1 Stmt. ¶ 7.) In February 2002, Robbins participated in the Flex Benefits Program ("the Plan") and was covered under the group long term disability insurance policy ("the Policy"). (Pl. 56.1 Stmt. ¶¶ 2, 8.) The Policy states that it shall pay a monthly benefit for "a period of total disability caused by a disease or accidental bodily injury." (Pl. 56.1 Stmt. ¶ 5; Def. Mem. Supp. Mot., Ex. ("Def. Ex.") 1, at 353.) The Policy defines "total disability" as follows:

> You are deemed totally disabled while either of the following applies to you: During the period which ends right after the first 24 months benefits are payable in a period of total disability: You are not able, solely because of injury or disease, to perform the material duties of your own occupation; except that if you start work at a reasonable occupation you will no longer be deemed totally disabled.

> Thereafter during such period of total disability: You are not able, solely because of injury or disease, to work at any reasonable occupation.

> You will not be deemed to be performing the material duties of your own occupation or working at a reasonable occupation on any day if: you are performing at least one, but not all, of the material duties of your own occupation or you are working at any occupation (full-time or part-time); and solely due to disease or injury, your income from either is 80% or less of your adjusted predisability earnings.

(emphasis in original). While Plaintiff submitted a responsive 56.1 statement, Defendant did not. All material facts set forth by the moving party in its statement of material facts that are not controverted by the opposing party in its own statement of material facts are deemed admitted. E.D.N.Y. Civ. R. 56.1(c). I shall therefore deem Plaintiff's statements in her 56.1 statement not addressed in Defendant's 56.1 statement to be admitted by Defendant. Id.

[2] References to the parties' E.D.N.Y. Local Civil Rule 56.1 statements incorporate those statements' underlying evidentiary references.

(Pl. 56.1 Stmt. ¶ 5; Def. Ex. 1, at 353.)  The Policy defines "reasonable occupation" as "any gainful activity for which you are, or may reasonably become, fitted by education, training or experience."  (Pl. 56.1 Stmt. ¶ 5; Def. Ex. 1, at 353.)

Beginning in 1999, Plaintiff sought medical care for muscle spasms and pain in her neck. (Pl. 56.1 Stmt. ¶ 10.)  In February 2002, Robbins stopped working and made a claim for short-term disability benefits.  Aetna approved the claim and provided Robbins with about five months of benefits.  (Id. ¶ 11-12; Def. Ex. 1, at 264, 274.)  During this period, Dr. Daniel Reinharth, her primary physician, provided Aetna with two completed forms regarding Robbins's short-term disability application.  (Pl. 56.1 Stmt. ¶ 19; Def. Ex. 1, at 264, 274.)  The first, dated April 3, 2002, states that Robbins was unable to work because of back pain and a tender neck caused by straining on the job, and that she was unable to return to work.  (Def. Ex. 1, at 274.)  The second, dated May 15 2002, repeats the above opinion, but adds that "she has improved, but not fully, and remains at risk for re-injury."  (Def. Ex. 1, at 190, 264.)

Robbins did not return to work, and claimed long-term disability benefits.  (Def. 56.1 Stmt. ¶ 4.)  On June 11, 2002, Aetna work records indicate that Aetna communicated the following message to Robbins:

> We . . . will only pay . . . [long-term disability] if she is disabled from performing the duties of all nursing jobs for which she is qualified by experience and/or education.  Advised that since she is certain she is not able to do her own job, she needs to start looking at other type[s] of jobs such as case management positions for hospitals and private insurance companies, etc.  [Employee] . . . states she is in too much pain now.  Advised of the [long-term disability] review process, and that we do have to collect all of her . . . medical info.

(Pl. 56.1 Stmt. ¶ 22; Def. Ex. 1, at 27.)  On July 24, 2002, Robbins contacted Aetna and informed it that her primary doctor was Dr. Daniel Reinharth, that she had a primary condition of chronic

neck and back pain and a secondary hip condition, in addition to Fibromyalgia, and that she could not return to her past position.  (Pl. 56.1 Stmt. ¶ 14-16; Def. Ex. 1, at 2.)

By letter dated September 12, 2002, Aetna denied Robbins's claim for long-term disability on the basis that "there is no proof that you are totally disabled from performing the material duties of your own occupation."  (Def. 56.1 Stmt ¶ 6; Piotrowski Aff. ¶ 8; Def. Ex. 1, at 153-55; Def. Ex. 4.)  Specifically, Aetna stated:

> We have reviewed the medical information provided to us by Dr. Liptez, Dr. Rokito, Dr. Rengarth, and Sports Therapy and Rehabilitation Services.  Dr. Lipetz and Dr. Rokito did not indicate in their records that your complaints were preventing you from performing the duties of your own occupation as a nurse.  Dr. Renharth did not provide us with objective medical evidence that supports the restrictions that he provided, and the physical therapy notes do not provide objective evidence nor document impairment from the duties of your occupation, thus your proof of disability has not been satisfied.

(Def. Ex. 4, at 1.)  The denial letter further stated that in an administrative appeal of the decision, the Plaintiff should furnish medical evidence to Aetna, including a narrative report from treating physicians, diagnostic studies, and information about Robbins's medical condition.  (Id. at 2.)

Plaintiff appealed that decision by letter dated October 24, 2002.  (Pl. 56.1 Stmt. ¶ 5; Def. Ex. 1, at 141-42.)  Robbins in her appeal letter stated that at North Shore LIJ, she had a twelve hour shift with mandatory overtime of three hours with few or no breaks, often for up to three consecutive days, and her position as an operating room nurse was stressful and required the movement of heavy equipment with quick physical movements.  (Def. Ex. 1, at 141.)  She alleged that she first developed muscle spasms and neck pain in September 1999 and again in December 2001, which were successfully treated by Dr. Reinharth and physical therapy such that she could return to her position at North Shore LIJ, but that treatment for her current condition did not allow her "to return to perform the material duties of my occupation."  (Id.)  Lastly, she

4

alleged (and Defendant has not denied) that the following medical evidence supports her long-term disability claim:

(a) Dr. Reinharth, her primary care physician, completed two Aetna forms on August 22 and September 23, 2002, and one form (attached by Robbins) states that Robbins "is currently disabled from her job as a nurse, because her nursing functions include physical activities which can (and have) reaggravate[d] her neck and back pain" (id. at 142-43);

(b) Jason S. Lipetz, M.D., the Director of Spine Rehabilitation at North Shore LIJ recommended that she not return to perform her duties as an operating room nurse (id. at 142);

(c) she performed physical therapy two days per week from March 2002 until September 6, 2002, after which the rehabilitation center provided her a note (which Robbins attached) stating "[a]s per patient[']s complaints of pain, the patient would most likely not tolerate duties associated as . . . [operating room] Nurse" (id. at 142, 145);

(d) Steven Rokito, M.D., an orthopedic surgeon, diagnosed Robbins with a snapping right hip as a secondary condition (id. at 142); and

(e) Robert Greenwald, M.D. diagnosed her with Fibromyalgia.  (Id. at 142.)

By letter dated November 1, 2002, Aetna acknowledged receipt of Robbins's appeal. (Def. 56.1 Stmt. ¶ 8; Def. Ex. 5.)  This letter stated that Plaintiff should submit all relevant medical evidence that she wished Aetna to consider in deciding her appeal by December 10, 2002.  (Def. Ex. 5, at 1.)  The letter further stated that "If no additional information is received we will continue to review your appeal with the information contained in your file."  (Id.)

On November 4, 2002, Robbins advised Aetna that she had taken a position as a school

nurse beginning October 24, 2002.  (Pl. 56.1 Stmt. ¶ 23; Def. Ex. 1, at 184.)  In that letter,

Robbins stated that she could not "perform the material duties of my occupation as an Operating

Room Nurse," that she was seeking a lesser-paying job that she could perform at North Shore

LIJ, and that the school nurse position was a temporary job with a (less demanding) seven hour

work schedule.  (Def. Ex. 1, at 184.)

By letter dated January 9, 2003, Aetna notified Plaintiff that it was upholding its

administrative decision to deny long-term benefits.  (Def. 56.1 Stmt. ¶ 8; Def. Ex. 7.)  In this

decision, Aetna discussed the Plaintiff's claims and the medical evidence submitted by Plaintiff

to support her claims.  Aetna stated that it reviewed the following medical evidence:  A letter

from Dr. Wayne Burte, dated December 2, 2002; an "office note" from Select physicians, dated

December 10, 2001, and a Specialty Referral Form, completed September 23, 1999, and a

referral form completed on September 23, 1999, a letter from Dr. Jason S. Lipetz, dated October

17, 2002 regarding an office visit from Select Physicians dated July 30, 2002; and all evidence

submitted with Plaintiff's October 24, 2002 administrative appeal.  (Id.)

In its denial of Robbins's appeal, Aetna noted Robbins claims of the following medical

conditions:  chronic generalized pain, discogenic cervical pain, "mechanical" cervical pain, FMS

(Fibromyalgia), brachial neuritis, headaches, right "snapping hip," and radiculitis.  (Def. Ex. 7, at

2.)  Regarding these claimed conditions, Aetna stated the following:

> Your diagnoses upon analysis of your file have been multiple and shifting, which
> includes all those listed above.  Unfortunately, all indicators and exams have
> established that at worst, none of the diagnosis, except perhaps the hip have been
> established to meet relevant diagnosis criteria, and all of the symptoms, physical
> exams, and test findings are either mild and equivocal, or absent entirely.

(Id.)  The denial letter based its decision on its analysis of the following medical evidence:

(a) in an office visit with Select Physicians on December 10, 2001, "a physical exam found neck and back non-tender and with full range of motion," despite complaints of neck pain, and limited range of motion, and in the next visit on February 2, 2002 Plaintiff related that non-steroid anti-inflammatories relieved her symptoms, and her complaints of neck pain and tingling were not borne out in physical exams, which showed no tenderness or limited motor strength, and the provider assessed radiculopathy despite a "complete absence of significant physical exam findings" (id.);

(b) physician notes from February 2002 through October 24, 2002 describe Plaintiff's complaints of stiff, tired and aching joints in the upper arms; however, her physician in the October 24, 2002 visit found her leg raise exam was negative, and her lower back was not tender, and modified her diagnosis to "chronic pain condition" (id.);

(c) Plaintiff's blood pressure, heart rate and respiratory rate have all remained within normal range, and physicians advised minimal treatment, such as occasional muscle relaxants and physical therapy (id.);

(d) Dr. Rokito, Plaintiff's orthopedist, diagnosed Plaintiff with a right hip "snap," with mild tenderness, but with no pain and normal range of motion and gait, and advised no specific treatment (id.); and

(e) a rheumatoid consultation on July 24, 2002 assessed Plaintiff with Fibromyalgia, but, apart from Dr. Wayne Burte, a chiropractor, none of the other four physicians noted any trigger points required to diagnosis Fibromyalgia, and Plaintiff did not manifest "cross-body and lower extremity paints also required for diagnosis" (id.);

In its denial letter, Aetna concluded that the medical evidence is "uniform in establishing

the absence of any objective pathology," or of any consistent and clinically significant physical findings, that physicians' lack of aggressive work-up, treatment, or narcotic medication demonstrate that Plaintiff's symptoms are of low severity, and prompted only by subjective complaints, and that the evidence contains no "objective clinical data that supports the presence of an impairment of a severity to prevent you from performing the essential functions of your medium work occupation as a registered nurse." (Id.)

## II.    Standard of Review

Under 20 U.S.C. § 1132(a)(1)(B), a party may bring suit to recover benefits due under an employee benefit plan. A decision to deny benefits to a participant in an employee benefits plan covered by ERISA is reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co., v. Bruch, 489 U.S. 101, 115 (1989). Where such discretionary authority is conferred upon a plan administrator or fiduciary, decisions relating to a participant's eligibility for benefits will not be disturbed by a court unless the decision is arbitrary and capricious. Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999); Murphy v. International Business Machines Corp., 23 F.3d 719, 721 (2d Cir. 1994).

In this case, the parties agree that the benefit plan grants Defendant discretionary authority to determine eligibility for benefits (see Pl. Am. Mem. Supp. Mot., at 9),[3] which is

_____

[3] Plaintiff asserts that, despite the discretion granted Defendant under the plan, that this court must consider the fact of "Aetna's dual role - as decider of the claim and its potential payor" (Pl. Reply Mem., at 1), as a conflict of interest that requires heightened review of Aetna's denial of benefits to Plaintiff. (Pl. Reply Mem., at 2 (citing Firestone, 489 U.S. at 115).) Defendant counters that Plaintiff has failed to show that any purported bias "affected the administrator's decision." Lacking a showing that the conflict of interest affected the fiduciary's

unambiguously conferred in the benefit plan:

> Aetna is a fiduciary with complete authority to review all denied claims for benefits in this policy . . . . [and] shall have discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy. Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously.

(Def. Ex. 1, at 381.) This court will therefore review the Defendant's denial of benefits under the arbitrary and capricious standard to determine whether it was "unsupported by substantial evidence or erroneous as a matter of law." Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000). Substantial evidence is evidence that a reasonable mind might accept as adequate to support the conclusion reached and "requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995); Lekperic v. Bldg. Serv. 32B-J Health Fund, 02-CV-5726, 2004 U.S. Dist. LEXIS 14020, at *9 (E.D.N.Y. July 23, 2004) (Gleeson, J.).

Under arbitrary and capricious review, in a case where the claimant and administrator "offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995) (internal quotation marks omitted). "Nevertheless, where the administrator 'imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, . . . [its] actions may well be found to be arbitrary and

---

determination of eligibility, any theoretical bias on the part of Aetna would not change the standard of review, but would instead be considered in analyzing whether plaintiff's claim was afforded a full and fair review. See Firestone, 489 U.S. at 115 (noting that fiduciary's conflict of interest is one factor to be weighed in determining whether a decision was arbitrary and capricious); Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1274 (2d Cir. 1995).

capricious.'" Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 93 (2d Cir. 2000) (quoting

O'Shea, 55 F.3d at 112 (internal quotation marks omitted)).

## III. Discussion

As noted above, both parties move for summary judgment. The arguments in favor of

and in opposition to the separate motions overlap. Thus, the motions will be considered together.

The crux of Plaintiff's motion is that Aetna's denial of her claim of eligibility for benefits was

arbitrary and capricious because (1) Aetna did not provide her with notice that it was defining

"own" occupation in a manner that excluded key responsibilities from her position as an

emergency room nurse; (2) its interpretation of Plaintiff's "own" occupation was arbitrary and

capricious; and (3) its adverse determination was not supported by substantial evidence because

it ignored medical evidence by her treating physicians that support a finding of disability. (Pl.

Am. Mem. Supp. Mot., 10-12; Pl. Reply, at 4.) Defendant responds that it provided Plaintiff

with proper notice, that its definition of "own" occupation was reasonable, and that Plaintiff's

contention that she is totally disabled is not supported by objective evidence. (Def. Mem. Supp.

Mot., at 5-12; Def. Mem. Supp. Mot., at 3-8.) These contentions will be considered in turn.

### A. Notice

ERISA provides that every employee benefit plan shall "provide adequate notice in

writing to any participant or beneficiary whose claim for benefits under the plan has been denied,

setting forth the specific reasons for such denial, written in a manner calculated to be understood

by the participant . . . ." 29 U.S.C. § 1133. The purpose of the notice requirements is "to provide

claimants with enough information to prepare adequately for further administrative review or an

appeal to the federal courts." Juliano v. Health Maintenance Organization of New Jersey, Inc.,

221 F.3d 279, 287 (2d Cir. 2000). Department of Labor regulations promulgated under ERISA

explicate the obligations that ERISA imposes upon administrators and fiduciaries to provide

notice to plan beneficiaries:

> The notification shall set forth, in a manner calculated to be understood by the claimant --
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
>
> (v) In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,
> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or
> (B) If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

29 C.F.R. 2560.503-1g(1)(i)-(v). The Second Circuit adheres to the substantial compliance

standard of review for ERISA challenges to notice received of administrative denials of claims,

Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98, 107 (2d Cir. 2005), which means that

"technical noncompliance" with ERISA procedures "will be excused" so long as the purposes of

§ 1133 have been fulfilled.  White v. Aetna Life Ins. Co., 210 F.3d 412, 414 (D.C. Cir. 2000).

This court finds that Aetna's communications with Plaintiff violated ERISA's notice requirement.  In Defendant's first communication with Plaintiff on June 11, 2002 denying her claim, Plaintiff was informed that Aetna "will only pay . . . [long-term disability] if she is disabled from performing the duties of all nursing jobs for which she is qualified by experience and/or education."  (Pl. Stmt. ¶ 22; Def. Ex. 1, at 27.)  This definition of "total disability" is an unreasonable application of Aetna's long-term disability plan, which defines "total disability" for claimants in the first twenty-four months of benefits to include all medical conditions that prevent claimants from performing the material duties of their "own" occupation.  (Pl. Stmt. ¶ 5; Def. Ex. 1, at 353.)  Moreover, Defendant concedes that "all nursing jobs for which she is qualified by experience and/or education" does not correctly define "total disability," and further states that it used different criteria to consider Plaintiff's claim on appeal.  (Def. Mem. Opp. Pl. Mot. Summ. J. at 5-6.)  However, it argues, an oral communication received prior to the written denial is irrelevant in reviewing whether it discharged its obligation to provide adequate notice. (Def. Mem. Opp. Pl. Mot. Summ. J. at 5.)  Defendant's position is contrary to the regulations and established case law.  In assessing whether notice substantially complies, a court considers not just the written notice itself, but all communications between parties.  White v. Aetna Life Ins. Co., 210 F.3d 412, 414 (D.C. Cir. 2000).  As Defendant concedes that its June 11, 2002 communication with Plaintiff misstated its policy definition of "total disability" within the relevant time period, the communication violated Plaintiff's notice rights pursuant to 29 C.F.R. 2560.503-1g(1)(ii) and (v).

Furthermore, Defendant failed to correct its previous misstatement in its September 12,

2002 written notice of its denial of Plaintiff's claim. In its initial denial letter, Defendant stated that "[t]o qualify for disability benefits during the first 24 months you must be unable . . . to perform the material duties of your own occupation." (Def. Ex. 1, at 153.) However, the Defendant did not inform Plaintiff what Aetna considered her "own" occupation to be, or what information Aetna would consider in support of her position that her "own" occupation was an operating room nurse. The written denial of Plaintiff's disability benefits was thus procedurally insufficient because, *inter alia*, it did not correctly identify the specific plan provision on which denial was based, as required by 29 C.F.R. § 2560.503-1(g)(ii), and it did not comply with 29 C.F.R. § 2560.503-1(g)(iii) and (iv), as it did not describe additional material or information necessary for her to perfect her claim. While the Second Circuit "forgives technical noncompliance for purposes of review of a plan administrator's discretionary decision," Nichols, 406 F.3d 98 at 107, Aetna's failure to correct its misrepresentation of "own" occupation in its written denial surpasses mere technical noncompliance, because it did not provide Plaintiff with a reasonable opportunity to perfect her administrative appeal. See Schneider v. Sentry Group Long Term Disability Plan, 422 F.3d 621, 628 (7th Cir. 2005).

Lastly, Defendant did not cure the notice defect by defining in its denial of Plaintiff's administrative appeal Plaintiff's "own" occupation as a "medium work occupation as a registered nurse." (Def. Ex. 7, at 2.) The purpose of the notice requirements is "to provide claimants with enough information to prepare adequately *for further administrative review* or an appeal to the federal courts." Juliano v. Health Maintenance Organization of New Jersey, Inc., 221 F.3d 279, 287 (2d Cir. 2000) (emphasis supplied). Aetna's failure to inform Plaintiff of the correct definition of "total disability" in time for her to perfect her administrative appeal caused her not

to receive a "full and fair" review of her administrative claim, inasmuch as Plaintiff was unable to submit evidence for Aetna to "consider . . . prior to reaching and rendering [its] decision." Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 598 (5th Cir. 1994); Sandoval v. Aetna Life And Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992).

Inadequate notice of denial of benefits may, in and of itself, constitute arbitrary and capricious denial of benefits. McLean Hosp. Corp. v. Lasher, 819 F. Supp. 110, 119 (D. Mass. 1993). However, Plaintiff's argument that Aetna's denial of Plaintiff's claim is *per se* arbitrary and capricious because Aetna did not utilize the correct definition of "total disability" as contained in the plan documents in its correspondence with Plaintiff is without merit.[4] (Am. Mem. Supp. Mot. at 8-9, 11-12.) If an administrator or fiduciary was correct in its ultimate decision to deny benefits, the court will uphold that decision even in light of a violation of § 1133 because all equitable remedies that would otherwise be available are moot in light of a determination that the administrator's decision is reasonable. Hickman v Gem Ins. Co., Inc., 299 F.3d 1208, 1215-16 (10th Cir. 2002). Therefore, Defendant's failure to provide adequate notice is not dispositive, and I shall proceed to consider whether Defendant's denial of Plaintiff's claim

---

[4] Plaintiff asks this court to review documents outside of the administrative record that purport to show that Aetna's procedure for deciding Plaintiff's claim violated 29 C.F.R. § 2560.503-1(b). (Id. at 10.) Under the arbitrary and capricious standard, review is normally limited to the administrative record. Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995). "Where, as here, the plan administrator is not disinterested . . . 'the decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause.'" Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 441 (2d Cir. 2006) (quoting DeFelice v. Am. Int'l Life Assurance Co., 112 F.3d 61, 66 (2d Cir. 1997)). Plaintiff's counsel acknowledges that these documents are irrelevant to the determination of whether Aetna's procedures in handling Plaintiff's claim were unreasonable, or inconsistent with its handling of other claims. (Am. Mem. Supp. Mot. at 11.) I decline Plaintiff's invitation for this court to review evidence outside the administrative record because Plaintiff failed to demonstrate good cause to admit the additional evidence.

14

was arbitrary and capricious.

**B.      The Parties' Substantive Claims**

Both parties have moved for summary judgment on the merits.  Plaintiff argues that

Defendant's designation of Plaintiff's "own" occupation in the "total disability" definition as a

general duty nurse was arbitrary and capricious, because she "worked as an operating room nurse

for more than a decade . . . ."  (Pl. Am. Mem. Supp. Mot., at 11.)  Defendant responds that its use

of the job description for "Nurse, General Duty" was not arbitrary and capricious but rather a

reasonable application of the Directory of Occupational Titles ("DOT"), which is compiled by

the U.S. Department of Labor.  (Def. Mem. Opp. Pl. Mot., 5-9.)  Plaintiff further contends that

Aetna ignored crucial evidence from her treating physician and erroneously relied upon a medical

examiner's opinion in order to find her not disabled.  (Pl. Am. Mem. Supp. Mot., at 13.)  Aetna

moves for summary judgment on this issue as well, claiming that its medical expert thoroughly

reviewed Plaintiff's medical evidence, and that Aetna's determination is based on a "very

thorough and carefully documented analysis . . . ."  (Def. Mem. Supp. Mot., 11.)  I shall consider

Aetna's interpretation of "own" occupation and the medical evidence in turn.

*1.      Definition of "Own" Occupation*

"Where coverage is denied based upon the decisionmaker's interpretation of the plan, the

issue is whether this interpretation was unreasonable in that it was erroneous as a matter of law."

Badawy v. First Reliance Standard Life Ins. Co., 04-Civ.-01619, 2005 U.S. Dist. LEXIS 21868,

at *23 (S.D.N.Y. Sept. 29, 2005).  A plan administrator's actions may be found to be arbitrary

and capricious where it "impose[s] a standard not required by the plan's provisions, or

interpret[s] the plan in a manner inconsistent with its plain words, or by [its] interpretation

render[s] some provisions of the plan superfluous." Gallo v. Madera, 136 F.3d 326, 330 (2d Cir. 1998). The overall question before this court is whether the Defendant's denial of Plaintiff's claim was infected by a "clear error of judgment." Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995).

Defendant has not met its burden to show that there is no issue of material fact as to whether its definition of "own" occupation was reasonable. A claimant's "own" occupation must take account of a claimant's true job duties, and a determination made upon an incorrect job description is arbitrary and capricious and cause for remand. Viglietta v. Metro. Life Ins. Co., 04-Civ.-3874, 2005 U.S. Dist. LEXIS 42924, at *28-*31 (S.D.N.Y. Aug. 3, 2005); Peterson v. Continental Casualty Co., 77 F. Supp. 2d 420, 426-28 (S.D.N.Y. 1999).[5] Defendant's claim that the DOT is a reasonable source is unavailing, because it is unclear from the administrative record whether Aetna actually relied on the DOT in its administrative review of her claim. The Second Circuit instructs that a district court under an arbitrary and capricious standard of review generally reviews only evidence contained within the administrative record. Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995). The administrative record is attached to Defendant's Motion for Summary Judgment as Exhibit 1, and a review of the administrative record does not reveal any use by Aetna of the DOT to reach its administrative decisions regarding Plaintiff's claim. (See Piotrowski Aff., dated Sept. 23, 2005 ¶ 4 (The documents in Exhibit 1 "comprise the entire administrative record relied on by Aetna in making their determinations with respect to plaintiff's claims."); Id. at Ex. 1.) Furthermore, a court should

---

[5] Contrary to explicit Second Circuit instructions, Defendant relies on unpublished Second Circuit cases to support its argument. Consistent with my obligations, I will not consider these cases as precedential authority in reaching my findings.

consider evidence outside the administrative record only upon a showing of good cause.  Paese,

449 F.3d at 441.  Defendant has not offered good cause for this court to consider its offering of

the DOT definition, and this court finds none since there is no evidence that Aetna actually used

the DOT in rendering its administrative denial. Therefore, this court is unable to make a

determination based on the administrative record whether Aetna's interpretation of "own"

occupation was reasonable.

On the other hand, Plaintiff does not convince this court that she is entitled to summary

judgment on the issue of whether Aetna's determination of Plaintiff's "own" occupation was

arbitrary and capricious.  As the plan documents grant Aetna discretion to construe the policy

terms in any reasonable manner, Aetna is entitled to utilize any reasonable definition of

Plaintiff's occupation that reflects her material job duties.  Thus, Aetna was not necessarily

required to accept Plaintiff's interpretation of her "own" occupation as an "Operating Room

Nurse," (Def. Ex. 1, at 141) or to adopt North Shore-LIJ's job description of "Registered Nurse."

(Id. at 307-309.)  While the Second Circuit has not specifically held that the DOT is a reasonable

source to define "own" occupation, neither can this court conclude that it is an unreasonable

source.  See, e.g.,  Nelson v. Unum Life Ins. Co. of Am., 421 F. Supp. 2d 558, 567 (E.D.N.Y.

2006) (Trager, J.) (accepting DOT as a reasonable source).[6]  However, lacking evidence that

Aetna *actually relied* on the DOT in reaching its determination, the issue of the definition of

---

[6] I also reject Plaintiff's conclusory allegation that Defendant's interpretation of "own"
occupation was tainted by bias, as Plaintiff has not substantiated this allegation with evidence
that Defendant has not applied this term "consistently with respect to similarly situated
claimants."  29 C.F.R. § 2560.503-1(b)(5); see also Glista v. Unum Life Ins. Co., 378 F.3d 113,
123 (1st Cir. 2004) ("Where a plan administrator has chosen consistently to interpret plan terms
in a given way, that interpretation is relevant in assessing the reasonableness of the
administrator's decision.").

Plaintiff's "own" occupation must be remanded to provide Plaintiff with reasonable notice to supply relevant information regarding her "own" occupation.

> 2.    *The Medical Evidence*

Plaintiff further argues that Aetna ignored crucial evidence from her treating physician and erroneously relied upon a medical examiner's opinion in order to find her not disabled. (Pl. Am. Mem. Supp. Mot., at 13.) Defendant contends that its examiner considered the Plaintiff's entire medical record, and the only medical evidence that it rejected were comprised of Plaintiff's subjective complaints, which it need not credit in reaching its determination. (Def. Mem. Further Supp. Mot. Sum. J., at 6-8.)

"ERISA Plan administrators need not give special deference to a claimant's treating physician." Paese, 449 F.3d at 442 (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003)). Specifically, this court may not impose on Aetna "a discrete burden of explanation when [it] credit[s] reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan, 538 U.S. at 834. At the same time, Aetna "may not 'cherry-pick' the evidence that it prefers while ignoring significant evidence to the contrary." Anderson v. Sotheby's, Inc. Severance Plan, 03-Civ.-8180, 2006 U.S. Dist. LEXIS 42539, at *59 (S.D.N.Y. June 21, 2006). As I have already held that Aetna's administrative denial violated Plaintiff's right to reasonable notice, and no evidence was presented that Aetna relied on reasonable criteria to determine Plaintiff's occupation, I shall grant either of the parties' motions for summary judgment only if a remand is unwarranted in light of the medical evidence.

Upon review, the present record is insufficient to grant either motion. First, the record reflects that Plaintiff's medical condition prevented her from performing the material duties of

her job as an operating room nurse. Specifically, Plaintiff enclosed in her administrative appeal a form by her primary care physician, Dr. Reinharth, which opines that Robbins is currently disabled because "her nursing functions include physical activities which can (and have) reaggravate[d] her neck and back pain" (Def. Mem. Supp. Sum. J., Ex. 1, at 142-43); Dr. Lipetz, the Director of Spine Rehabilitation at North Shore LIJ assessed that Plaintiff could not perform her duties as an operating room nurse (Id. at 142); and a rehabilitation center submitted notes that also opined that Plaintiff could not work as an operating room nurse. (Id. at 142, 145.) Aetna's appeal denial, which does mention this evidence but relies instead on "examples" of evidence that suggest a finding that Plaintiff is not disabled, gives rise to the inference that Aetna selectively used evidence, which would lead this court to find that Aetna's decision was arbitrary and capricious. (Def. Ex. 7, at 1-4.) This court thus cannot grant summary judgment to Defendant on the basis that no genuine issue of fact exists as to whether Plaintiff is able to work in her "own" occupation.

On the other hand, Plaintiff has failed to show that she is disabled under any reasonable definition of "own" occupation. As stated supra, Aetna is not obligated to define "own" occupation as her *exact* position, since the policy does not define "own" occupation, and grants Aetna the discretion to define "own" in any reasonable manner. Furthermore, there is some medical evidence that Plaintiff could perform the material duties of a registered nurse, viz.: physician notes that Plaintiff's neck pain was controlled with anti-inflammatories, and there is some disagreement among examining physicians about whether Plaintiff could be diagnosed with Fibromyalgia. (Def. Mem. Supp. Sum. J., Ex. 7, at 1-4.) See Bella v. Metropolitan Life Ins. Co., 98-CV-0150E(F), 1999 U.S. Dist. LEXIS 15473, at *14-*15 (W.D.N.Y. Sept. 30, 1999); De

<u>Jesus v. Metropolitan Life Ins. Co.</u>, 95-CV-3069, 1997 U.S. Dist. LEXIS 23639, at *15-*16 (E.D.N.Y. Apr. 22, 1997) (Gleeson, J.).  Moreover, to the extent that her treating physician's opinions were based solely on Plaintiff's subjective complaints, an administrator is not required to accept such opinions without other corroborating evidence.  <u>See</u>, <u>e.g.</u>, <u>Straehle v. INA Life Ins. Co.</u>, 392 F. Supp. 2d 448, 459 (E.D.N.Y. 2005) (Block, J.); <u>Maniatty v. Unum Provident Corp.</u>, 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002).  Plaintiff's argument that the approval of her short-term disability claim establishes a valid long-term disability claim is without merit, as Plaintiff has not established that the eligibility criteria for short-term and long-term disability insurance benefits are the same.  Thus, there is a genuine issue of material fact as to whether Plaintiff's medical conditions meet the policy definition of totally disabled.

"In light of the conflicting medical evidence, the court finds that neither party has succeeded in eliminating any genuine issue of material fact, making summary judgment on the merits inappropriate."  <u>Dzidzovic v. Bldg. Serv. 32B-J Health Fund</u>, 02-CV-6140, 2006 U.S. Dist. LEXIS 55546, at *31 (S.D.N.Y. Aug. 7, 2006).  Where the record "is incomplete and [the court] cannot conclude that there is no possible evidence that could support a denial of benefits," remand is appropriate.  <u>Miller v. United Welfare Fund</u>, 72 F.3d 1066, 1074 (2d Cir. 1995).  I therefore remand the case back to Aetna with the instruction that it reconsider Plaintiff's application and comply with the plan language and the requirements of 29 U.S.C. § 1133 in issuing a new decision.  Specifically, Aetna must provide Plaintiff an opportunity to submit evidence supporting her position that Plaintiff's "own" occupation is an operating room nurse.  <u>Nelson</u>, 421 F. Supp. at 571.

**IV.     Conclusion**

For the reasons set forth above, the Defendant's motion is DENIED and Plaintiff's

motion is GRANTED to the extent that this matter is REMANDED to Defendant to issue a new

determination as set forth in this Memorandum and Order.

SO ORDERED.


Dated:  September __, 2006                    ___/s/_____
        Brooklyn, N.Y.                        Nicholas G. Garaufis
                                              United States District Judge